UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PONTCHARTRAIN GARDENS, INC.,                CIVIL ACTION
ET AL.

VERSUS                                      NO: 07-7965

STATE FARM GENERAL INSURANCE                SECTION: R(1)
COMPANY, ET AL.

## ORDER AND REASONS

Before the Court are seven motions for partial summary
judgment filed by State Farm Fire & Casualty Company.  The Court
rules as follows.

## I.  Background

This case arises out of damage sustained by a 44-unit
apartment complex located at 111 Westchester Place in Slidell,
Louisiana due to Hurricane Katrina.  Plaintiff Pontchartrain
Gardens, Inc., a Louisiana corporation, owned the property at the
time of the Hurricane.  The property was insured under a
commercial property policy issued by defendant State Farm Fire &

Casualty Company.  In early September 2005, Pontchartrain Gardens reported that the apartment complex had sustained a covered loss for wind damage. (R. Doc. 49-1, Entry Nos. 4-5).  State Farm's adjuster determined that the apartment complex sustained wind damage totaling $278,701.90 and authorized payment for the actual cash value amount, $166,862.84.[1] (R. Doc. 49-1, Entry Nos. 15-17).  On December 1, 2005, Pontchartrain Gardens informed State Farm that it wanted the property reinspected because the estimate was too low. (R. Doc. 49-1, Entry No. 25).

Pontchartrain Gardens sold the apartment complex to plaintiff Viper Investments, LLC on January 24, 2006. (R. Doc. 32-5).  The contract of sale contained an assignment clause that provided:

> All rights to insurance proceeds pertaining to hurricane damage to the property conveyed herein, including but not limited to insurance for loss of income and flood, fire and wind damage previously paid to seller are retained by the seller.  Any additional insurance proceeds payable as a result of hurricane damage (excluding loss of income) are assigned to Purchaser.

(R. Doc. 32-5).  The State Farm policy, however, contained an anti-assignment clause, providing that: "Your rights and duties under this policy may not be transferred without our written

---

[1]The actual cash value amount is the amount of damages minus depreciation.

consent except in the case of death of an individual Named Insured." On April 13, 2006, Viper informed State Farm that it now owned the insured premises and requested that State Farm reinspect the property. (R. Doc. 47-1, Entry Nos. 84-86). State Farm adjuster Chris Trimble reinspected the property on April 20, 2006 and recognized that more payments were due on the claim. (R. Doc. 49-2, Depo. of Trimble, 87:8-88:11). On the same day, a representative of Viper provided State Farm with a copy of the real estate purchase contract containing the assignment clause. (R. Doc. 47-2). State Farm, however, did not issue a payment to Viper. Viper asserts it was forced to sell the property because of the delay in receiving the insurance proceeds, and on September 29, 2006, it sold the property, "as is," to Westchester Apartments, LLC for $1.6 million (R. Doc. 32-6), $600,000 more than the $1 million it spent to purchase the property. (R. Doc. 32-5). Viper did not sell the rights to the insurance proceeds. (R. Doc. 32-6). On November 21, 2006, the owners of Viper, plaintiffs John Fayard and Otis Favret, purchased all of the shares of Pontchartrain Gardens. (R. Doc. 49-4). The next day, plaintiffs Viper and Pontchartrain Gardens submitted a sworn proof of loss to State Farm, claiming $975,405.70 under the policy. (R. Doc. 49-5). On December 6, 2006, State Farm issued a payment in the amount of $303,293.64 to Pontchartrain Gardens.

(R. Doc. 49-1, Entry No. 158).

Plaintiffs sued State Farm General Insurance Company and State Farm Fire and Casualty Company in state court on August 28, 2007. The case was removed to this Court and is scheduled for trial on January 20, 2009. Defendant State Farm now moves for partial summary judgment on the following issues: (1) whether individual plaintiffs Fayard and Favret should be dismissed (R. Doc. 28); (2) whether mental anguish is recoverable (R. Doc. 30); (3) whether plaintiffs can recover for lost business opportunity (R. Doc. 31); (4) whether plaintiffs can recover more than the actual cash value of their property under Coverage A (R. Doc. 32); (5) whether plaintiffs can recover for loss of income (R. Doc. 33); (6) whether plaintiffs can recover under the amended version of Louisiana Revised Statute 22:658[2] (R. Doc. 34); and (7) whether plaintiffs can recover for loss of business personal property. (R. Doc. 35).

## II. Legal Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex*

---

[2]Louisiana Revised Statute 22:658 has now been renumbered as 22:1892 by Acts 2008, No. 415, § 1, effective January 1, 2009.

4

*Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex,* 477 U.S. at 325; *Lavespere,* 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex,* 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

**III. Discussion**

State Farm has filed seven motions for partial summary judgment. The Court will address them in turn.

**A.    Favret and Fayard**

State Farm seeks to dismiss plaintiffs Favret and Fayard since they are not named insureds under the policy, nor were they alleged to have been assigned the right to recover under the policy. State Farm asserts that Favret and Fayard cannot recover as shareholders of Pontchartrain Gardens or members of Viper Investments, LLC. Plaintiffs have filed a memorandum of no opposition to this motion. (R. Doc. 45). The Court finds that State Farm's motion has merit, and GRANTS summary judgment on this issue.

**B.    Mental anguish**

State Farm seeks to dismiss plaintiffs' claims for mental anguish and emotional distress damages since neither corporations nor limited liability companies can incur damage for mental anguish or emotional distress. Plaintiffs have filed a memorandum of no opposition to this motion. (R. Doc. 46). Because the Court has dismissed the individual plaintiffs from the lawsuit, the only parties left are Pontchartrain Gardens and Viper. Since neither company may incur damage for mental

anguish, *see AT&T Corp. v. Columbia Gulf Transmission Co.*, No. 07-1544, 2008 WL 4585439 at *3 (W.D. La. Sept. 15, 2008), the Court GRANTS State Farm's motion for summary judgment on plaintiffs' mental anguish claims.

### C. **Lost business opportunity**

State Farm contends that Viper cannot recover damages for loss of business opportunity. State Farm argues that as Pontchartrain's alleged assignee, Viper is not entitled to a greater recovery than Pontchartrain itself could recover. State Farm further asserts that Viper cannot recover under either the policy or Louisiana Revised Statute section 22:1220.[3] Viper contends that it can recover the loss of business opportunity as consequential damages under 22:1220 and that it can recover more than Pontchartrain could recover because, as assignee, it stands in the shoes of Pontchartrain as to its cause of action, not its damages. Viper does not dispute that the policy itself does not provide coverage for lost business opportunities.

---

[3]Louisiana Revised Statute 22:1220 has now been renumbered as 22:1973 by Acts 2008, No. 415, § 1, effective January 1, 2009.

## 1.    Assignment of a claim under section 22:1220

The Court will first consider whether an assignee[4] of insurance benefits may recover at all under section 22:1220. Under Louisiana law, "all rights may be assigned, with the exception of those pertaining to obligations that are strictly personal.  The assignee is subrogated to the rights of the assignor against the debtor." La. Civ. Code art. 2642.  When an obligee's rights are assigned to another, the assignee "steps into the shoes" of the obligee. *Hose v. Younger Bros., Inc.*, 878 So.2d 548, 550 (La. Ct. App. 2004).  The assignee "acquires only those rights possessed by its assignor at the time of assignment." *Del-Remy Corp. v. Lafayette Ins. Co.*, 616 So.2d 231, 233 (La. Ct. App. 1993).

State Farm contends that even if Pontchartrain validly assigned its insurance contract rights to Viper, Viper does not have standing to sue under Louisiana Revised Statute 22:1220. Section 22:1220 provides that insurers have a duty "to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both.  Any

---

[4]Although State Farm disputes the validity of the assignment of benefits to Viper, it contends that the validity need not be decided to rule on this motion.  The Court will thus assume, *arguendo*, that the assignment of insurance proceeds was valid.

insurer who breaches these duties shall be liable for any damages sustained as a result of the breach." La. Rev. Stat. 22:1220(A). A breach of the insurer's duty includes "failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." La. Rev. Stat. 22:1220(B)(5). "Insured" is defined as "the party named on a policy or certificate as the individual with legal rights to the benefits provided by such policy." La. Rev. Stat. 22:1212(B).

State Farm argues that, because "statutes subjecting insurers to penalties . . . should be strictly construed," *see* *Theriot v. Midland Risk Ins. Co.*, 694 So.2d 184, 186 (La. 1997), Viper cannot recover since section 22:1220 limits recover to insureds and claimants. It contends that Viper qualifies as neither. Viper avers that it can recover as either an insured or a claimant.

The Contract of Sale between Pontchartrain Gardens and Viper contained the following assignment clause:

> All rights to insurance proceeds pertaining to
> hurricane damage to the property conveyed herein,
> including but not limited to insurance for loss of
> income and flood, fire and wind damage previously paid
> to seller are retained by the seller. Any additional
> insurance proceeds payable as a result of hurricane

>     damage (excluding loss of income) are assigned to
>     Purchaser.

(R. Doc. 32-5).  Thus Viper was assigned the right to claim any

additional insurance proceeds, other than loss of income, that

State Farm owed Pontchartrain.  As Pontchartrain's assignee whose

rights were acquired after the loss, Viper acquires "only those

rights possessed by its assignor at the time of the assignment."

*Del-Remy Corp.*, 616 So.2d at 233; *see also Carte Blanche Corp. v.

Pappas*, 216 So.2d 917, 919 (La. Ct. App. 1968); *In re Ellington

Planting Co.*, 60 So. 25, 27 (La. 1912).  Viper thus has the right

to pursue the unpaid benefits under the policy resulting from

Hurricane Katrina.  Because Pontchartrain's claim for bad faith

damages under 22:1220 had accrued at the time of assignment,

Viper may also pursue any damages *Pontchartrain* incurred from

defendants' alleged violation of section 22:1220.

State Farm contends that Viper cannot bring its bad faith

claims because they depend on a defective assignment of litigious

rights.  Under Louisiana law, a litigious right is a right that

is contested in a suit already filed. La. Civ. Code art. 2652.

State Farm relies on the reasoning in a footnote of a Fifth

Circuit decision, *Parich v. State Farm Mut. Automobile Ins. Co.i,*

919 F.2d 906, 917 n.3 (1990), for the proposition that

Pontchartrain's assignment was defective because the right

assigned was merely a cause of action, not a right contested in a
suit already filed. In *Parich*, a driver insured under a
liability policy attempted to assign a car accident victim his
right to sue his insurer for negligent failure to settle. In
order to validly assign his rights, the insured was supposed to
sign the Assignment agreement after the lawsuit was filed and
answered. *Id.* at 916. The Fifth Circuit found that, because the
insured signed the agreement before State Farm filed its answer,
the assignment of litigious rights was invalid. *Id.* at 917. In a
footnote, the Fifth Circuit explained that:

> [A] mere dispute may not be [assigned]. . . When the
> right to be assigned is only a cause of action, the law
> recognizes the incentive to forment litigation and the
> possibilities of barratry and champerty, and thus
> places special limitations on the ability to transfer
> these litigious rights. A nascent cause of action for
> a tort that is nothing more than a dispute between two
> parties is not transferable.

*Id.* at 917 n.3 (internal citations omitted). The footnote was
not necessary to the Fifth Circuit's holding, and since the
decision, three courts have disagreed with the reasoning in the
footnote. *See King v. Illinois Nat'l Ins. Co.*, 986 So.2d 839, 842
(La. Ct. App. 2008); *Steirwald v. Phoenix Ins. Co.*, 2001 WL
617542 at *2 (E.D. La. May 30, 2001) (Duval, J.); *Sanderson v.
H.I.G. P-XI Holding, Inc.*, 2001 WL 245788 at *1 (E.D. La. March
9, 2001) (Sear, J.). The *Steirwald* court explained:

As a matter of statutory application, reliance upon
article 2652 is inappropriate because that article does
not address the fundamental question of whether the
right to a cause of action can be assigned. The thrust
of article 2652 and its definition of litigious rights,
for purposes of that article only, focuses upon the
temporal rules regarding redemption or extinguishment
of a litigious right. It does not purport to
articulate what rights may be assigned in the first
place or the method by which they may be assigned. The
relevant article with respect to whether a right may or
may not be assigned is article 2642, which provides in
relevant part that "*[a]ll rights* may be assigned, with
the exception of those pertaining to obligations that
are strictly personal . . ." La. Civ. Code art. 2642
(emphasis added). The article gives legislative
recognition to the fact that incorporeal rights, except
for strictly personal obligations, are generally
assignable." La. Civ. Code art. 2642, cmt. (a). . .

*Steirwald*, 2001 WL 617542 at *3. The *King* court similarly held

that:

La. C. C. art. 2652 simply sets forth a legal scheme
for when a pending suit is transferred. The article
has no application to transfer of rights before a suit
is filed. It neither authorizes or prohibits such
transfer, but is silent on the subject. To this extent
we disagree with the reasoning in *Parich* . . .

*King*, 986 So.2d at 842. The *Sanderson* court distinguished the

cases relied on in the Fifth Circuit footnote, finding that "they

do not support the present defendant's claim that a nascent

dispute is not assignable" and holding the assignment of such a

dispute to be valid. *Sanderson*, 2001 WL 245788 at *2.

The Court agrees with the *King*, *Steirwald*, and *Sanderson*

12

courts that article 2652 simply does not govern whether a nascent dispute may be assigned. The assignment is governed by article 2642, which allows "all rights" to be assigned, "with the exception of those pertaining to obligations that are strictly personal." La. Civ. Code art. 2642. A strictly personal obligation is one that can be enforced only by the obligee. La. Civ. Code art. 1766. Professor Saul Litvinoff has explained, for instance, that an obligation to provide medical services to a certain person, or one to provide him with meals, can be enforced only by that person as obligee and is extinguished upon the person's death. 5 Saul Litvinoff Louisiana Civil Law Treatise, Law of Obligations § 4.13. The right to pursue damages for an insurer's failure to comply with its duties is not such a strictly personal obligation. *See Steirwald*, 2001 WL 617542 at *3. Although the insurer's duties are owed only to the insured, "claims for breach of [those] duties [may] be asserted by . . . someone who derives his right from the insured." *Id.* (quoting William Shelby McKenzie and H. Alston Johnson, Insurance Law and Practice, 15 Louisiana Civil Law Treatise at ¶222). Accordingly, the Court finds that article 2642 allowed Pontchartrain to assign any nascent causes of action under 22:1220 to Viper.

## 2.  Scope of the assignee's claim

State Farm is correct, however, in its contention that Viper
is not entitled to assert its lost business opportunity claim.
As the assignee of Pontchartrain's insurance claim, Viper
acquired the rights Pontchartrain possessed at the time of
assignment. *See Del-Remy*, 616 So.2d at 233.  Viper also took
Pontchartrain's claim subject to all defenses that could have
been asserted against Pontchartrain. *Id.; see also* 3 Couch on
Insurance 37:6 (3d ed.).  Although Viper's rights include the
right to bring any bad faith claim that accrued under section
22:1220 prior to assignment, they do not include the right to
recover damages incurred after the assignment that could not have
been recovered by Pontchartrain itself.  Any such claim would be
subject to the defense that Pontchartrain did not actually
sustain such consequential damages, which neither party contests.

Further, Pontchartrain assigned Viper its claim to insurance
proceeds (except business income) due from Hurricane Katrina, not
its insurance policy.  Because Viper was not in a contractual
relationship with State Farm, it does not have standing as an
insured to bring a separate claim against State Farm for damages
it incurred as a result of State Farm's alleged bad faith.  The
Louisiana Supreme Court has explained that:

> It is generally agreed that an insurer's duties run
> primarily in favor of its insured as an outgrowth of
> duties that have their foundation in the contract
> between the parties.  It is the relationship of the
> parties that gives rise to the implied covenant of good
> faith and fair dealing.

*Theriot v. Midland Risk Ins. Co.*, 694 So.2d 184, 193 (La. 1997).

Here, State Farm and Viper had no contractual relationship, and thus State Farm had no duty to act in good faith in its dealings with Pontchartrain.  Viper has no claim for lost business opportunity as an "insured" under section 22:1220.

Neither does Viper have a claim for lost business opportunity as a "claimant."  The Court recognizes that virtually all of the cases involving "claimants" under section 22:1220 "involve *liability* policies where a 'claimant' is one who is the ultimate beneficiary of the policy." *LaSalle Parish School Bd. v. Allianz Global Risks U.S. Ins. Co.*, 2008 WL 1859847 at *8 (W.D. La. 2008) (finding that a situation in which a plaintiff wished to sue the insurer that issued the plaintiff's insurer a reinsurance policy did not give rise to a cognizable claim under section 22:1220).  The Court has found no cases in which an assignee attempted to bring his own claim under section 22:1220 as a "claimant." Even if Viper is considered a claimant, section 22:1220 provides a cause of action for such claimants under limited circumstances.  The *Theriot* court held that third-party

15

claimants have a cause of action under section 22:1220 only if the defendant has committed one of the specific acts listed in section 22:1220(B). 694 So.2d at 193. The only provision of section 22:1220(B) potentially applicable to Viper is (B)(5), which provides that an insurer if liable for:

> Failing to pay the amount of any claim due any person *insured by the contract* within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

La. Rev. Stat. 22:1220(B)(5) (emphasis added). But a number of Louisiana courts have held that third-parties cannot bring a claim under section 22:1220(B)(5), since the statute refers to the amount of the claim due "any person insured." *See Toerner v. Henry*, 812 So.2d 755, 758 (La. Ct. App. 2002); *Woodruff v. State Farm Ins. Co.*, 767 So.2d 785, 788 (La. Ct. App. 2000); *Celestine v. State Farm Mut. Auto. Ins. Co.*, 735 So.2d 1, 4 (La. Ct. App. 1998). Accordingly, Viper does not have standing to bring a claim under section 22:1220 as a claimant. Because Viper cannot bring a claim in its own right under section 22:1220, Viper is limited to Pontchartrain's claim that accrued prior to assignment, which did not include damages for lost business opportunity. Accordingly, the Court GRANTS State Farm's motion for summary judgment on this issue.

### D.    Actual cash value

State Farm's next motion asks the Court to limit the
potential recovery of plaintiffs under Coverage A to the actual
cash value of the damaged property.  Actual cash value is equal
to the replacement cost value minus depreciation. *See, e.g., Real
Asset Mgmt., Inc. v. Lloyd's of London*, 61 F.3d 1223, 1228 n.7
(5th Cir. 1995).  State Farm contends that the policy limits
recovery to actual cash value unless the damaged property is
repaired after the loss.  State Farm acknowledges that plaintiffs
made limited repairs, but avers that they did not make repairs
beyond the amount already paid by State Farm and cannot now make
those repairs since they sold the property.  Plaintiffs contend
that the policy is ambiguous as to whether they can recover
replacement cost value regardless of whether they made repairs to
the property.

To determine whether plaintiffs' recovery is limited to the
actual cash value of the property they did not repair, the Court
must examine the insurance policy itself.  Under Louisiana law,
an insurance policy is a contract that constitutes the law
between the parties, and it must be interpreted in accordance
with the general rules of contract interpretation set forth in
the Louisiana Civil Code. *See Peterson v. Schimek*, 729 So. 2d

1024, 1028 (La. 1999) (citing La. Civ. Code art. 1793); *Ledbetter v. Concord Gen. Corp.*, 665 So. 2d 1166, 1169 (La. 1996); *Crabtree v. State Farm Ins. Co.*, 632 So. 2d 736 (La. 1994)); *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 420 (La. 1988). The extent of insurance coverage is determined by the parties' intent as reflected by words in the policy. *See* La. Civ. Code art. 2045; *Peterson*, 729 So. 2d at 1028 (citing *Ledbetter*, 665 So. 2d at 1169). If the policy wording is clear, and it expresses the intent of the parties, the agreement must be enforced as written. La. Civ. Code art. 2046; *Pareti*, 536 So. 2d at 420. If an ambiguity exists, the ambiguity must be construed in favor of the party seeking coverage. *Id.* The Court may not alter the terms of the policy under the guise of contract interpretation when the language of the policy is unambiguous. *Id.*

State Farm is correct that the terms of the policy limit recovery to the actual cash value of property that is never replaced or repaired. The policy provides:

1.  **Loss Payment**. In the event of loss covered by this policy:

    a.  we will give notice, within 30 days after we receive the sworn statement of loss, of our intent to settle the loss according to one of the following methods:

        (1) pay the value of lost or damaged property as determined in Condition 2. Valuation;

18

(2) pay the cost of replacing or repairing
the lost or damaged property, plus any
reduction in value of repaired items.

\* \* \*

2.   **Valuation**. The value of covered property will be
     determined at:

     a.   replacement cost, without deduction for
          depreciation, as of the time of loss to all
          covered property other than that described in
          b. below, but:

          (1) you may make a claim for loss covered by
          this insurance on an actual cash value basis
          instead of on a replacement cost basis.  In
          the event you elect to have loss settled on
          an actual cash value basis, you may still
          make a claim on a replacement cost basis if
          you notify us of your intent to do so within
          180 days after the loss;

          (2) *we will not pay for any loss on a
          replacement cost basis until the lost or
          damaged property is actually repaired or
          replaced* and then, only if the repairs or
          replacement are made as soon as reasonably
          possible after the loss;

(R. Doc. 51-1) (emphasis added).  The policy unambiguously allows

State Farm to pay only actual cash value unless repairs are

*actually made*.  Louisiana courts have upheld similar contractual

provisions. *See Hackman v. EMC Ins. Co.*, 984 So.2d 139, 143 (La.

Ct. App. 2008); *Sharplin v. Cas. Reciprocal Exch.*, 628 So.2d 217,

221 n.6 (La. Ct. App. 1993).  Because plaintiffs do not assert
that they actually made the repairs or intend to make the repairs
in the amount of the replacement cost value they are claiming,
State Farm is obligated only to pay them for the damaged property
on an actual cash value basis.

**E.    Loss of income**

State Farm's fifth summary judgment motion asserts that
Pontchartrain is not entitled to recover on its loss of income
and loss of rents claim.  Plaintiffs do not dispute that their
claim is properly categorized as a loss of income, rather than
loss of rents, claim.  Plaintiffs further concede that only
Pontchartrain has a loss of income claim because of the
exclusionary language in the assignment clause.  The only issue
is whether Pontchartrain has a viable loss of income claim.

Coverage C of the insurance policy provides coverage for
loss of income.  The policy states that State Farm will pay:
"for the actual loss of 'business income' you sustain due to the
necessary suspension of your 'operations' during the 'period of
restoration.'" (R. Doc. 33-4).  The policy defines "period of
restoration" as the time that:

   a.    begins with the date of accidental direct physical
         loss caused by an insured loss at the described
         premises; and

20

b.   ends on the date when the property at the
           described premises should be repaired, rebuilt or
           replaced with reasonable speed and similar
           quality.

(R. Doc. 33-4).  The policy further limits payment for loss of

income to the income lost for up to 12 months following a covered

loss under the policy. (R. Doc. 33-4).  State Farm paid

Pontchartrain $56,599 for loss of income. (R. Doc. 53-8, Depo. of

John Goddard, 25:11-21).  State Farm's payment was based on

periods of restoration that differed from apartment to apartment,

since some apartments were not as badly damaged as others.

      State Farm contends that it fully paid Pontchartrain for its

lost income.  Pontchartrain argues that there are material issues

of fact as to whether State Farm properly calculated the "period

of restoration" in which lost income was due.  Specifically,

Pontchartrain asserts that State Farm failed to properly consider

the damage to the apartment complex's office, gym, lobby, and

kitchen in calculating the period of restoration.[5]

      The Court is mindful that in the context of a summary

judgment motion, all reasonable inferences must be resolved in

_____

      [5]Pontchartrain also cites an unsworn expert report to show
that there are material issues of fact as to the period of
restoration.  But because such reports are not competent summary
judgment evidence, the Court will not consider the report. *See
Provident Life and Acc. Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th
Cir. 2001).

                              21

favor of the nonmoving party, *see Chieftain Intern., Inc. v. Southeast Offshore, Inc.*, --- F.3d ---, 2008 WL 5264018 at *2 (5th Cir. 2008). In this posture, the record reflects that there are factual issues as to whether the periods of restoration were properly calculated. Pontchartrain has provided evidence that the apartment offices, gym, lobby, and kitchen sustained wind damage that was not restored within a 12-month period. (R. Doc. 53-9). One could infer that without functioning offices and other amenities, the apartment complex may have been unable to reopen and begin incurring income, even if certain apartments were fully repaired and inhabitable. State Farm's own employee, John Goddard, testified that some office facilities would be necessary to administer the apartment complex. (R. Doc. 53-8, Depo. of Goddard, 40:9-11). Thus Pontchartrain has created a factual issue as to whether State Farm improperly ignored the period of restoration for the office facilities in calculating the relevant period of restoration for loss of income.

State Farm further avers that plaintiffs may not recover for lost income because they failed to begin repairs on a timely basis so as to reduce the period of restoration. It is undisputed, however, that State Farm's November 7, 2006 estimate shows that State Farm initially underpaid plaintiffs' claim (R. Doc. 53-9) and that State Farm later tendered a payment for

$303,293.64 to Pontchartrain Gardens.  Because State Farm's delay in payment may have caused any untimely repairs, the Court finds that factual issues preclude summary judgment on this matter.

### F.  La. Rev. Stat. 22:658

State Farm next argues that because plaintiffs' claim accrued before the 2006 amendment to Louisiana Revised Statute 22:658, the amended version that provides for attorney's fees and enhanced penalties is inapplicable.  Plaintiffs allege that their claim accrued after the date the amendment became effective.

In June 2006, the Louisiana legislature passed an amendment that increased the penalty recoverable under section 22:658 from 25% to 50% of the amount an insurance claimant was owed and reinstated a provision for reasonable attorney's fees and costs. *See Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 197 (La. 2008). The statute took effect on August 15, 2006, and the Supreme Court of Louisiana has held that the changes do not apply retroactively. *Id.* at 201.  The statute provides:

> A (1) All insurers issuing any type of contract . . .
> shall pay the amount of any claim due any insured
> within thirty days after receipt of satisfactory proofs
> of loss from the insured . . .
>
> B (1) Failure to make such payment within thirty days
> after receipt of such satisfactory written proofs and
> demand . . . when such failure is found to be

arbitrary, capricious, or without probable cause, shall
subject the insurer to a penalty, in addition to the
amount of the loss, of fifty percent damages on the
amount found to be due from the insurer to the insured
. . . or in the event a partial payment or tender has
been made, fifty percent of the difference between the
amount paid or tendered and the amount found to be due
as well as reasonable attorney fees and costs.

La. Rev. Stat. 22:658.

*Sher* holds that, although an insurer has a continuing duty
of good faith and fair dealing, claims that first arose before
the amendment of section 22:658 are covered by the previous
statute and its 25% penalty provision. *Sher*, 988 So.2d at 199.
The later statute applies, however, if the plaintiff's cause of
action arose after the amendment. *Id.* The *Sher* court explained
that a plaintiff's cause of action can arise: (1) when the
insurer fails to pay 30 days after receiving satisfactory proof
of loss; (2) when a complaint is filed, if plaintiff had not
previously provided satisfactory proof of loss; or (3) when
defendant fails to pay within 30 days when plaintiff provides
satisfactory proof of loss of new damage, even if defendant
already paid plaintiff for previously discovered damage.

The record reflects that plaintiffs' claim accrued
before the 2006 amendments.  Viper was assigned the
insurance proceeds, not the policy, and thus cannot recover

24

as an insured under section 22:658.  As discussed, *supra*,
Viper acquired the rights Pontchartrain possessed at the
time of assignment, *see Del-Remy*, 616 So.2d at 233, which
would include any nascent claims for damages under section
22:658 that Pontchartrain had incurred prior to assignment.
But any such claims would have accrued prior to the January
2006 assignment, and thus well before the effective date of
the 2006 amendments.

Further, Viper does not have standing in its own right
to bring any claims under section 22:658 that may have
arisen after the assignment.  Section 22:658(A)(1) applies
only to claims made by an insured. *See Woodruff v. State
Farm Ins. Co.*, 767 So.2d 785, 789-90 (La. Ct. App. 2000);
*Payton v. Colar*, 518 So.2d 1104, 1108 (La. Ct. App. 1987);
*ANF Partners #1 v. Lexington Ins. Co.*, 2007 WL 1191227 at *5
n.12 (E.D. La. 2007).  Because Viper is not an insured, it
cannot recover for any damages it incurred because of State
Farm's failure to pay after the assignment.

### G.   Loss of business personal property

Finally, State Farm contends that plaintiffs' Coverage
B claim for damage to business personal property fails
because plaintiffs cannot prove that their personal property

was damaged by wind, rather than flood.  Plaintiffs contend that the evidence that the damaged contents were located on the second floor of the office building supports a finding that the contents were damaged by wind.

Coverage B, for business personal property, is an "open peril" policy, providing coverage for "accidental direct physical loss," subject to the policy's specific exclusions, limitations and conditions.[6]  The Fifth Circuit has recently explained that, "[u]nder Louisiana law, the insured must prove that the claim asserted is covered by his policy. Once he has done this, the insurer has the burden of demonstrating that the damage at issue is excluded from coverage." *Dickerson v. Lexington Ins. Co.*, --- F.3d ---, 2008 WL 5295389 at *2 (5th Cir. 2008).  Thus here, plaintiffs have the burden of proving that their claim is an accidental direct physical loss, and then the burden shifts to State Farm to prove that the damage was caused by flood and thereby excluded under the policy. *See id.*

State Farm's motion mistakenly assumes that plaintiffs

---

[6]State Farm's memorandum states that plaintiffs' business personal property is covered on a "named peril" basis.  State Farm's counsel contacted the Court to correct the error and confirm that the coverage is on an "open peril" basis.

have the initial burden of segregating their wind and water
damage. But under *Dickerson*, plaintiffs must prove only
that the insured property sustained some wind damage. It is
undisputed that the structure surrounding the business
personal property sustained both wind and flood damage.
Thus plaintiffs have carried their burden, and State Farm
now has the burden of proving which pieces of business
personal property were damaged by flood. Because State
Farm's motion does not provide such proof, summary judgment
is unwarranted. The Court DENIES State Farm's motion.


**IV. Conclusion**

    For the foregoing reasons, the Court GRANTS State
Farm's motions for summary judgment on (1) whether
individual plaintiffs Fayard and Favret should be dismissed;
(2) whether mental anguish is recoverable; (3) whether
plaintiffs can recover for lost business opportunity; (4)
whether plaintiffs can recover more than the actual cash
value of their property under Coverage A; and (5) whether
plaintiffs can recover under the amended version of
Louisiana Revised Statute 22:658. The Court DENIES State
Farm's motions for summary judgment regarding whether

plaintiffs can recover for loss of income and whether

plaintiffs can recover for loss of business personal

property.

New Orleans, Louisiana, this <u>13th</u> day of January, 2009.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE